(C. D. 1961)

BAKER PERKINS, INC.
R. F. DOWNING & CO., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 29, 1958)

*Strauss & Hedges* (*E. Thomas Honey* and *Eugene F. Blauvelt* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., dissenting

LAWRENCE, Judge: Certain imported merchandise, identified on the invoices as "One Type 11CM Cocoa Liquor Grinding Mill, No. 473444" and "2 Sets of 10CM Mk. V11 Finishing Discs," was classified as a food-grinding or chocolate-manufacturing machine and parts thereof pursuant to the provision for machines, finished or unfinished, not specially provided for, and parts, in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372) and assessed with duty at the rate of 27½ per centum ad valorem.

Plaintiffs rely upon the claim that the machine should be classified as an article having as an essential feature an electrical element or device in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and is properly dutiable at 15 per centum ad valorem; and that the two sets of finishing discs should be classified at the same rate as parts of said grinding mill.

The pertinent text of the statutes to which reference has been made is stated below.

Paragraph 372 of the Tariff Act of 1930—

* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided,* That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *.

Paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802—

Machines, finished or unfinished, not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

 Other (except wrapping and packaging machines; food
 grinding or cutting machines; machines for determin-
 ing the strength of materials or articles in tension,
 compression, torsion, or shear; machines for making
 paper pulp or paper; machines for manufacturing
 chocolate or confectionery; and internal-combustion
 engines) _____ 15% ad val

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\* \* \* \* \* \* \*

Other_____ The same rate of duty as the articles of which they are parts

### Paragraph 353, as modified, *supra*—

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other articles (except machines for determining the strength of materials or articles in tension, compression, torsion, or shear; flashlights; batteries; vacuum cleaners; and internal-combustion engines)_____ 15% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part_____ The same rate of duty as the articles of which they are parts.

The two protests involved herein were consolidated at the trial, at which time it was stipulated that the merchandise in controversy is in chief value of metal.

The sole witness in the case, Mr. Harold Ward, vice president and branch manager of Robert A. Johnston & Co. of Hillside, N. J., testified that his firm purchased the imported merchandise which is now in use in their New Jersey plant and that the two sets of finishing discs were imported as replacements for the original discs which were in the machine at the time of its importation, approximately 10½ months previously. He stated that the finishing discs were essential and necessary for the operation of the machine in which they are used exclusively, and that the mill is utilized for the purpose of grinding cocoa nibs into what is known as chocolate liquor, which is one of the intermediate steps in the production of chocolate. From Ward's testimony, it appears that the mill occupies floor space of about 4 feet 6 inches by 6 feet. It is electrically motivated by a V-belt drive with a 40-horsepower Crocker-Wheeler motor. When in

operation, the chocolate nib or meat of the cocoa bean is brought by a conveyor to a hopper located at the top of the mill and, by means of an electromagnet, fastened to the hopper, any metal particles that might be fed into the mill are extracted. The testimony shows further that the nibs are first preground on roughing discs and then further ground on a set of finishing discs which reduces the particles in size and, as a result of the friction heat, reduces the nibs to a chocolate liquor which is then conveyed to a liquor storage tank.

At the time of importation, the mill was complete with the exception of the electric motor which, the record discloses, is the only practicable means of energizing the machine. It seems that local ordinances prohibit the use of a gasoline engine and that a steam engine would be inefficient and not economical, and we are satisfied from the record that, from a commercial standpoint, electricity is the only motive power that can be employed for the operation of this mill.

Plaintiffs cite the case of *Davies Turner & Company* v. *United States*, 33 Cust. Ct. 278, C. D. 1665, as being directly in point here. In that case, the merchandise consisted of a meat-slicing machine which had been classified as a machine, not specially provided for, in paragraph 372, *supra*. The plaintiff there contended that the machine should be classified as an article having as an essential feature an electrical element or device within the purview of paragraph 353 of said act, as modified, *supra*. It appears further from the opinion that the motor, pulley, and handle for the machine were not imported with the machine, but were added to it before it was put into operation. The machine was equipped with electrical wiring and, as in the case now before us, it could not be operated for practical commercial purposes other than by electric motive power.

In holding that the meat-slicing machine should be classified in paragraph 353, we applied the principle of decision enunciated in *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, wherein our appellate court stated, in part—

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph [353] is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

We then stated:

The record amply demonstrates that the imported food-cutting machines were designed to be and, after importation, were equipped with an electric motor

which operates a meat table upon which meat is placed and fed toward the knife and the stacking mechanism which must synchronize with the meat table in order for the machine to work properly, and, furthermore, that it would not be commercially practical to operate the machine by manual or any other power. We are satisfied from the evidence before us that the requirements set forth in the *Dryden* case, *supra*, to constitute a device as "essentially an electrical article" have been fulfilled.

Defendant, in the *Davies* case, contended that, even assuming for the sake of argument that the meat-slicing machines did have as an essential feature an electrical element or device, they were not of the class of articles named in paragraph 353. In our opinion, we observed that paragraph 353 named the following exemplar articles: Electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs—a variety of articles widely differing in many mechanical and physical respects, but all having the common attribute of being essentially electrical articles. We, accordingly, held that the meat-slicing machines there in controversy were, in the language of the *Dryden* case, *supra*, "within the class of articles named in this paragraph [353]."

The facts in the *Davies* case closely parallel those in the present controversy. In the former case, we had a meat-slicing machine, and, in the present case, a chocolate-grinding machine. In both cases, electrical motive power was added to the machines after importation, and, in each case, electrical power was the only practical commercial motivating force.

We have examined the various authorities cited by defendant in its brief, but find it unnecessary to discuss them here.

We find and hold that the cocoa liquor grinding mill and the two sets of finishing discs for that mill should be classified in paragraph 353, *supra*, as articles having as an essential feature an electrical element or device, wholly or in chief value of metal, and parts thereof, and dutiable at 15 per centum ad valorem, as claimed by importer.

To the extent indicated, the protests are sustained and judgment will issue accordingly.

## DISSENTING OPINION

Ford, Judge: The principles involved in this case appear to be the same as those involved in *Davies Turner & Company* v. *United States*, 33 Cust. Ct. 278, C. D. 1665. The merchandise in that case was a machine imported without an electrical motor, but into which an electrical motor was installed after importation. The same situation prevails in this case. It was my view in the *Davies Turner & Company* case, *supra*, and it is my views in the present case, that the decision of the majority in both cases reads out of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on

Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, the words "such as electric motors." For the reasons stated in my dissent in the *Davies Turner & Company* case, *supra*, I feel that the classification made by the collector in this case was correct and should be affirmed.